UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| MONAHAN SFI, LLC d/b/a <br> MONAHAN FILAMENTS, <br> Plaintiff, <br><br> vs. <br><br> 3M COMPANY and 3M GULF, LTD., <br> Defendants. | Civil Action No. 1:09-CV-187 <br><br> Hon. J. Garvan Murtha <br> District Judge |

# PLAINTIFF MONAHAN SFI'S RESPONSE TO DEFENDANT 3M COMPANY'S MOTION TO DISMISS

## Introduction

3M's motion to dismiss (Dkt. No. 11) is directed to Monahan's original complaint (Dkt. No. 1), which was replaced and rendered null and void by Monahan's First Amended Complaint.[1]  Thus 3M's motion should be denied as moot.

In any event, Monahan's original and amended complaints both meet the permissive notice-pleading standard under the Federal Rules of Civil Procedure.  The U.S. Supreme Court's decision in *Ashcroft v. Iqbal* has not changed that standard.  All that is necessary to survive a motion to dismiss under Rule 12(b)(6) is "'a short and plain statement of the claim showing that the pleader is entitled to relief.'  *Specific facts are not necessary*; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007) (emphasis added) (quoting FED. R. CIV. P. 8(a)(2) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Both Monahan's original complaint and

---

[1] Monahan's First Amended Complaint is being hand filed simultaneously with the e-filing of this Response.

its amended complaint easily clear this low threshold. Accordingly, the Court should allow Monahan's claims to go forward.

## Analysis

### I. Monahan's Amended Complaint Renders 3M's Motion to Dismiss Moot.

The Court should deny 3M's motion to dismiss because Monahan's amended complaint, filed as of right, renders the motion moot. Rule 15 of the Federal Rules of Civil Procedure provides that "[a] party may amend its pleading once as a matter of course . . . before being served with a responsive pleading." FED. R. CIV. P. 15(a)(1)(A). This Court has held that "in the Second Circuit, a motion to dismiss is not a responsive pleading that terminates the right to amend without leave of the district court." *Haselton v. Amestoy*, No. 1:03-CV-223, 2004 U.S. Dist. LEXIS 4525, at *16 (D. Vt. Mar. 16, 2004) (citing *Barbara v. NYSE*, 99 F.3d 49, 56 (2d Cir. 1996)) (attached as **Ex. 1**).

An amended complaint supersedes and replaces the original. *Florida Dep't of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 702 (1982) (White, J., concurring in part & dissenting in part on other grounds). It "render[s] the original complaint null and void." *Vadas v. United States*, 527 F.3d 16, 22 n.4 (2d Cir. 2007) (quoting *Davenport v. Saint Mary Hosp.*, 633 F. Supp. 1228 (E.D. Pa. 1986)).[2]

In addition to rendering the original complaint null and void, an amended complaint moots a motion to dismiss. *E.g., Roller Bearing Co. of America, Inc. v. American Software, Inc.*,

---

[2] *Accord Ramallo Bros. Printing, Inc. v. El Dia, Inc.*, 490 F.3d 86, 88 n.2 (1st Cir. 2007) ("[Plaintiff's] amended complaint completely supersedes his original complaint, and thus the original complaint no longer performs any function in the case."); *Swanson v. Perez*, 250 F. App'x 596, 597 (5th Cir. 2007) ("An amended complaint supersedes the original complaint and renders it of no legal effect . . . .") (quoting *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994)); *Enderwood v. Sinclair Broad. Group, Inc.*, 233 Fed. App'x. 793, 800 (10th Cir. 2007) (same) (quoting *Davis v. TXO Prod. Corp.*, 929 F.2d 1515, 1517 (10th Cir. 1991)); *Young v. City of Mt. Ranier*, 238 F.3d 567, 573 (4th Cir. 2001) (same); *In re Atlas Van Lines, Inc.*, 209 F.3d 1064, 1067 (8th Cir. 2000) (same).

570 F. Supp. 2d 376, 384 (D. Conn. 2008) ("Because a motion to dismiss is not considered a 'responsive pleading' for Rule 15 purposes, an amended complaint filed 'as a matter of course' pursuant to Rule 15(a) renders moot a motion to dismiss directed at the original complaint.") (citing *Chodos v. FBI*, 559 F. Supp. 69, 70 n.2 (S.D.N.Y. 1982)).[3]

Because 3M has not yet filed a responsive pleading, Monahan was entitled to amend its original complaint as of right and without leave of court or opposing counsel. *See Haselton*, 2004 U.S. Dist. LEXIS 4525, at *16. Monahan filed its original complaint on August 12, 2009. (Dkt. No. 1.) On October 9, 2009, 3M filed its motion to dismiss. (Dkt. No. 11.) And on November 9, 2009, Monahan filed its First Amended Complaint. That amendment rendered 3M's motion, which is directed to the original complaint, moot. *See Roller Bearing*, 570 F. Supp. 2d at 384. Accordingly, the Court should deny 3M's motion.

## II. 3M's Motion to Dismiss Should Be Denied Because Both Monahan's Original Complaint and Monahan's Amended Complaint Satisfy the Notice Pleading Standard.

### A. *The Federal Rules Require Only a Short and Plain Statement of the Claim Showing That the Pleader Is Entitled to Relief.*

The simple notice-pleading standard under the Federal Rules of Civil Procedure is still the rule of law. All that is required to survive a 12(b)(6) motion is "'a short and plain statement

---

[3] *See also Ciliberti v. Int'l Bhd. of Elec. Workers Local 3*, No. 08-CV-4262 (DGT), 2009 U.S. Dist. LEXIS 66912, at *3–4 (E.D.N.Y Aug. 3, 2009) (denying a motion to dismiss as moot upon the filing of an amended complaint) (attached as **Ex. 3**); *Ammerman v. Gardner*, No. 3:08-CV-1026, 2009 U.S. Dist. LEXIS 12157, at *1 (N.D.N.Y. Feb. 18, 2009) ("The filing of an Amended Complaint super[s]edes a prior Complaint and typically moots the motion to dismiss." (citing *Byng v. Campbell*, No. 9:07-CV-471 (GLS/DRH), 2009 U.S. Dist. LEXIS 6424 (N.D.N.Y. Jan. 21, 2009))) (attached as **Ex. 4**); *Glass v. Kellogg Co.*, 252 F.R.D. 367, 368 (W.D. Mich. 2008) ("Because the original complaint has been superseded and nullified, there is no longer a live dispute about the propriety or merit of the claims asserted therein; therefore, any motion to dismiss such claims is moot.") (citing *May v. Sheahan*, 226 F.3d 876, 879 (7th Cir. 2000); *Ky. Press Ass'n, Inc. v. Kentucky*, 355 F. Supp.2d 853, 857 (E.D. Ky. 2005); *Cedar View, Ltd. v. Colpetzer*, No. 5:05-CV-00782, 2006 U.S. Dist. LEXIS 7018, *5 (N.D. Ohio Feb. 24, 2006))) (attached as **Ex. 5**); *Brown v. Napoli*, No. 07-CV-838S, 2008 U.S. Dist. LEXIS 76205, at *4–5 (W.D.N.Y. Sept. 29, 2008) (same) (citing *Haywood v. Republic Tobacco, Co.*, No. 05-CV-842A, 2007 U.S. Dist. LEXIS 25792 (W.D.N.Y. April 6, 2007)) (attached as **Ex. 6**).

3

of the claim showing that the pleader is entitled to relief.' *Specific facts are not necessary*; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007) (emphasis added) (quoting FED. R. CIV. P. 8(a)(2) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

The recent U.S. Supreme Court decision in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), does not change this analysis. Indeed, in *Iqbal*, the Court reaffirmed the same notice-pleading standard, requiring only "a short and plain statement" giving the defender "fair notice of the claim and its grounds." 129 S. Ct. at 149 ("Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.' As the Court held in *Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929, the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. . . . Taking the complaint as a whole, it gives Ashcroft and Mueller 'fair notice of what the . . . claim is and the grounds upon which it rests.'").

The purpose of a 12(b)(6) motion is to test the legal sufficiency of a complaint by asking whether it states a claim for relief.[4] A 12(b)(6) motion does not address or resolve issues—or potential issues—of fact. On the contrary, on a motion to dismiss the Court must assume all the complaint's allegations to be true: "Under rules of procedure that have been well settled since well before . . . *Theatre Enterprises*, a judge ruling on a defendant's motion to dismiss a complaint 'must accept as true all of the factual allegations contained in the complaint.'" *Bell*

---

[4] *See Streit v. Bushnell*, 424 F. Supp. 2d 633, 640 (S.D.N.Y. 2006) ("In reviewing a complaint for legal sufficiency for the purposes of adjudicating a Rule 12(b)(6) motion, the Court's point of departure is Rule 8(a)(2). Pursuant to the liberal pleading requirements of the Federal Rules of Civil Procedure, a plaintiff need provide only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'").

4

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 572 (2007) (quoting *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508, n. 1 (2002)).

Form 11 in the Appendix to the Federal Rules of Civil Procedure provides an example of just how simple and brief the short and plain statement of accepted-as-true facts may be while still passing the *Twombly* pleading test. Rule 84 provides that "[t]he forms in the Appendix [, of which Form 11 is one,] suffice under these rules and illustrate the simplicity and brevity that these rules contemplate." FED. R. CIV. P. 84. And the Supreme Court noted in *Twombly* that the Forms, particularly Form 11, pass muster under the pleading standard enunciated in that case. 550 U.S. at 565 n.10. Form 11 states a claim of negligence under the standard applied in *Twombly* simply by pleading that "[o]n *date*, at *place*, the defendant negligently drove a motor vehicle against the plaintiff." FED. R. CIV. P. FORM 11. The U.S. Supreme Court explained in *Twombly* why this is a sufficient statement of a claim: the "model form alleges that the defendant struck the plaintiff with his car while plaintiff was crossing a particular highway at a specified date and time . . . . A defendant wishing to prepare an answer in the simple fact pattern laid out in Form [11] would know what to answer . . . ." *Twombly*, 550 U.S. at 565 n.10.

The Form does not allege any specific facts going to negligence (*e.g.*, it does not allege that defendant was driving too fast, swerved over the dividing line, or was driving while intoxicated). It simply alleges that the defendant was negligent. The only "adornments" to that "naked," "the-defendant-unlawfully-harmed-me accusation," are the date and place at which the unlawful harm occurred. *See Iqbal*, 129 S. Ct. 1949 (citing *Twombly*, 550 U.S. at 555). Yet such a simple and brief statement is all that is required. FED. R. CIV. P. 84; *Twombly*, 550 U.S. at 565 n.10.

### B. Monahan's Complaint States a Claim for Relief Under Theories of Contract, Promissory Estoppel, and Unjust Enrichment.

#### 1. Vermont Law Controls This Inquiry.

Vermont substantive law applies to Monahan's contract-based claims against 3M and 3M Gulf. Federal courts sitting in diversity apply the forum state's choice-of-law rules. *Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997) (citing *Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.*, 933 F.2d 131, 137 (2d Cir. 1991)). And Vermont has adopted the choice-of-law rules in the *Restatement (Second) of Conflicts*. *McKinnon v. F.H. Morgan & Co., Inc.*, 750 A.2d 1026, 1028 (Vt. 2000). The Restatement focuses on the forum with the most significant relationship to the occurrence and the parties, RESTATEMENT (SECOND) OF CONFLICT OF LAWS §§ 145(1), 188, and in this case the parties agree that Vermont is the forum with that relationship. (*See* Dkt. No. 11, Def.'s Mot. to Dismiss 4.) Accordingly, Vermont law applies.

#### 2. Monahan's Complaint States a Claim for Breach of Contract.

3M's motion should be dismissed with respect to Monahan's breach-of-contract claim because Monahan's complaint alleges both of the elements required under Vermont law to state a claim for breach of contract against 3M and 3M Gulf. Under Vermont law a plaintiff alleging breach of contract must plead two elements: the existence of a contract and the breach of that contract. *Ben & Jerry's Homemade v. Coronet Priscilla Ice Cream Corp.*, 921 F. Supp. 1206, 1212 (D. Vt. 1996).

Monahan's complaint alleges both of the required elements. Monahan alleges the existence of and performance under a contract: "Monahan supplied Defendants with Products pursuant to Defendants' purchase orders." (Dkt. No. 1, Compl. ¶ 59; First Am. Compl. ¶ 80.) As explained in Plaintiff's First Amended Complaint, 3M itself placed a substantial order for the

6

products at issue — referring to "our," 3M and 3M Gulf's, orders. (Dkt. No. 1, First Am. Compl. ¶¶ 19–21.) And Monahan alleges breach of the parties' contract: "Defendants' failure to pay the amount due, unconditionally return any allegedly defective Products or otherwise account to Monahan for the Products or damages related to the purchase orders Defendants purportedly cancelled is a material and substantial breach of the parties' agreement." (Dkt. No. 1, Compl. ¶ 62; First Am. Compl. ¶ 83.) In fact, a substantial portion of the compensation that Monahan seeks in this action is tied to shipments of product under orders made directly by 3M— not 3M Gulf. Accordingly, Monahan has stated a breach-of-contract claim against 3M under Vermont law, and 3M's motion with respect to this claim should be denied.

3M argues that the Court should ignore the allegations in the complaint because of certain documents attached to the complaint. This argument is a red herring. The documents attached to Monahan's complaint are entirely consistent with Monahan's allegations that it had a contract with both 3M and 3M Gulf. The documents show that 3M Gulf and Monahan had a contractual relationship. They do not preclude or conflict with the allegations in the complaint that 3M and Monahan also had a contractual relationship. For example, the "Accounts Receivable Aging Report" attached to Monahan's complaint shows that 3M Gulf and Monahan had a contract; it does not preclude or in any way contradict Monahan's allegation in the complaint that Monahan *also* had a contract with 3M. (Dkt. No. 1, Compl., Ex. 2, at 2.) Similarly, the invoices attached to the complaint are examples of Monahan's contractual relationship with 3M Gulf. (*Id.* at 3– 18.) They are not inconsistent with or preclusive of a contractual relationship with 3M.

The exhibits attached to Monahan's First Amended Complaint further bolster this conclusion. Those exhibits include documents evidencing a substantial order placed by 3M directly. (First Am. Compl. ¶¶ 19–21, 47; *id.*, Ex. 3.) Monahan's damages in this case thus relate in substantial part to 3M's failure to pay for or return the product shipped under that order.

7

Moreover, as discussed below, even if Monahan's factual allegations with respect to 3M were somehow insufficient to state a claim that 3M had a direct contractual relationship with Monahan, the Court should nevertheless deny 3M's motion with respect to this claim because Monahan has sufficiently alleged that 3M Gulf was 3M's agent, alter ego, or both.

### 3. Monahan's Complaint States a Claim for Promissory Estoppel.

3M's motion should be dismissed with respect to Monahan's promissory-estoppel claim because Monahan alleges all three elements necessary to state a promissory estoppel claim under Vermont law against 3M and 3M Gulf. Under Vermont law, a plaintiff alleging promissory estoppel must plead three elements: "(1) a promise on which the promisor reasonably expects the promisee to take action or forbearance of a substantial character; (2) the promise induced a definite and substantial action or forbearance; and (3) injustice can be avoided only through the enforcement of the promise." *Green Mountain Inv. Corp. v. James*, 807 A.2d 461, 464 (Vt. 2002). Monahan's complaint alleges each of the three required elements.

First, the complaint alleges that "Defendants promised to pay for Products that they ordered from Monahan," a promise that was "clear, definite and unequivocal and was specifically made to induce Monahan to purchase polypropylene and unique packaging materials necessary to manufacture the Products, manufacture, deliver and invoice Defendants for the Products." (Dkt. No. 1, Compl. ¶¶ 66–67; First Am. Compl. ¶¶ 87–88.) Furthermore, Monahan has alleged that "[a]t the time of making the promise and inducing action on Monahan's part, Defendants could reasonably foresee that their failure to perform pursuant to the promise would cause the damages Monahan has suffered." (Dkt. No. 1, Compl. ¶ 70; First Am. Compl. ¶ 91.) Second, the complaint alleges that "[i]n reliance on Defendants' promise, and to its substantial detriment, Monahan purchased polypropylene and unique packaging materials necessary to manufacture the Products, and manufactured, delivered and invoiced Defendants for the

Products." (Dkt. No. 1, Compl. ¶ 68; First Am. Compl. ¶ 89.) Finally, the complaint alleges that "[t]o avoid injustice, Defendants' promise to purchase and pay for the products should be enforced." (Dkt. No. 1, Compl. ¶ 69; First Am. Compl. ¶ 90.) The complaint pleads all of the elements of a promissory estoppel claim under Vermont law. Accordingly, 3M's motion to dismiss with respect to this claim should be denied.[5]

### 4. Monahan's Complaint States a Claim for Unjust Enrichment.

3M's motion should be denied with respect to Monahan's unjust enrichment claim because Monahan's complaint alleges both elements necessary to state that claim under Vermont law against 3M and 3M Gulf. To state a claim for unjust enrichment, a complaint must contain allegations that (1) a party received a benefit, and (2) the retention of that benefit would be inequitable. *In re Estate of Elliott*, 542 A.2d 282, 285 (Vt. 1988) (quoting *Cedric Elec., Inc. v. Shea*, 472 A.2d 757, 757 (Vt. 1984)).

Monahan's complaint alleges both of the required elements. First, it alleges that "Monahan conferred a benefit on Defendants by providing the Products to Defendants, for which Defendants knew payment was expected." (Dkt. No. 1, Compl. ¶ 72; First Am. Compl. ¶ 93.) Second, it alleges that "[t]o allow Defendants to retain such a benefit without compensating Monahan would result in Defendants being inequitably and unjustly enriched." (Dkt. No. 1, Compl. ¶ 73; First Am. Compl. ¶ 94.) Because the complaint specifically alleges both elements

---

[5] 3M's argument that its motion should be granted based on the documents attached to Monahan's complaint is without merit for the reasons discussed in Part II.B.2.b of this Brief. The allegations in the complaint apply equally to 3M and 3M Gulf and are entirely consistent with the documents attached to the complaint showing that 3M Gulf had a contract with Monahan. In any event, as discussed below, the complaint states claims against 3M under veil-piercing and agency theories.

of an unjust enrichment claim under Vermont law, 3M's motion should be denied with respect to this claim.[6]

### C. Monahan's Complaint States a Claim for Relief Against 3M Under a Veil-Piercing Analysis.

3M's motion should be denied with respect to Monahan's veil-piercing claim because both Monahan's original and amended complaints allege each of the elements necessary to state a veil-piercing claim under Delaware law. Both complaints easily satisfy the notice-pleading requirement to provide a short and plain statement "showing that [Monahan] is entitled to relief" from 3M under a veil-piercing analysis. *See Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007).

Under Delaware law, two elements must be pleaded to state a veil-piercing claim.[7] First, the corporation and its shareholder must have operated as a single entity. *Union Carbide Corp. v. Montell N.V.*, 944 F. Supp. 1119, 1144 (S.D.N.Y. 1996) (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1458 (2d Cir. 1995)). Second, there must have been an overall element of injustice or unfairness that justifies the equitable remedy of looking beyond the corporate fiction to pierce the corporate veil. *Id.* (quoting *Fletcher*, 68 F.3d at 1458).

Delaware courts consider a variety of factors in determining whether a plaintiff has established the first element. Six factors in particular are most frequently listed by the courts: (1) undercapitalization, (2) failure to observe corporate formalities, including absence of corporate records and improper functioning of officers and directors, (3) nonpayment of dividends, (4) insolvency, (5) the parent's siphoning the subsidiary's funds, and (6) the fact that the corporation is generally a mere façade for the stockholder. *Fletcher*, 68 F.3d at 1458 (citing *Harco Nat'l Ins.*

---

[6] 3M's argument that its motion should be granted based on the documents attached to Plaintiff's complaint is without merit. *See supra* sections II.B.2, II.B.3, and note 4.

[7] "In order to state an alter ego claim under Delaware law, a plaintiff must plead that the parent and subsidiary 'operated as a single economic entity, and 'must demonstrate an overall element of injustice or unfairness.'" *Union Carbide Corp. v. Montell N.V.*, 944 F. Supp. 1119, 1144 (S.D.N.Y. 1996) (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1458 (2d Cir. 1995)).

*Co. v. Green Farms, Inc.*, No. 1131, 1989 Del. Ch. LEXIS 114, at *4 (Del. Ch. Sept. 19, 1989) (attached as **Ex. 2**)).

The cases make it clear that "no single factor" is dispositive, *United States v. Golden Acres, Inc.*, 702 F. Supp. 1097, 1104 (D. Del. 1988), and the absence in a complaint of specific allegations of any or all of the six factors listed above does not justify "granting a motion to dismiss where the plaintiff has made other relevant allegations." *Union Carbide*, 944 F. Supp. at 1145. The cases cited by 3M in its motion support this proposition.[8] Those cases hold that no single factor is dispositive and that courts will look to all of the factors alleged, including whether plaintiff alleged an element of unfairness or inequity, in determining whether a plaintiff stated a veil-piercing claim under Delaware law.[9]

Under the second element, it is enough to simply allege "an overall element of injustice or unfairness." *Harco*, 1989 Del. Ch. LEXIS 114, at *12. An allegation of fraud is not required. *Id.* In fact, the pleading standard for the second element can be met by alleging that a plaintiff was an innocent outsider and the defendants operated as a single economic entity. *Gabriel Capital, LP v. NatWest Finance, Inc.*, 122 F. Supp. 2d 407, 435 (S.D.N.Y. 2000).

With respect to the first element of its veil-piercing claim, Monahan alleged numerous facts relating to the six factors discussed above, showing that 3M and 3M Gulf operated as a single entity. Monahan alleged that 3M Gulf is a wholly owned subsidiary of 3M. (Dkt. No. 1,

---

[8] See *Carapico v. Philadelphia Stock Exchange, Inc.*, 791 A.2d 787, 793 (Del. Ch. 2000) (holding that a court may look to common central management, in addition to other factors, in determining whether a subsidiary is the alter ego of its parent); *Trustees of the Village of Arden v. Unity Construciton Co.*, No. 15025, 2000 Del. Ch. LEXIS 7, at *12 (Del. Ch. Jan. 26, 2000) ("A court can pierce the corporate veil of an entity where there is fraud or where a subsidiary is in fact a mere instrumentality or alter ego of its owner.") (attached as **Ex. 7**); *Upjohn Co. v. Syntro Corp.*, No. 89-107-JJF, 1990 WL 79232, at *4 (D. Del. Mar. 9, 1990) (observing that veil piercing is appropriate where a parent fully owns a subsidiary, the parent refers to the subsidiary as a "division," and other factors are present) (attached as **Ex. 8**).

[9] See *Trustees of the Village of Arden*, 2000 Del. Ch. LEXIS 7, at *12; *Upjohn Co.*, 1990 WL 79232, at *4.

11

Compl. ¶ 41; First Am. Compl. ¶ 55.) It was formed to act as 3M's marketing and sales agent. (Dkt. No. 1, Compl. ¶ 42; First Am. Compl. ¶ 56.) 3M has described 3M Gulf as a "foreign branch." (Dkt. No. 1, Compl. ¶ 43; First Am. Compl. ¶ 57.) 3M Gulf does business out of an "administrative office." (Dkt. No. 1, Compl. ¶ 43; First Am. Compl. ¶ 57.) Its business address is a post office box in Dubai Internet City thus further supporting the view that it is merely a branch or division operating for the benefit of 3M. (Dkt. No. 1, Compl. ¶ 44; First Am. Compl. ¶ 58.) It is undercapitalized. (Dkt. No. 1, Compl. ¶ 45; First Am. Compl. ¶ 59.) It is completely integrated with and controlled by 3M's management team. (Dkt. No. 1, Compl. ¶ 46; First Am. Compl. ¶ 60.) 3M—in an indistinguishable role from that of 3M Gulf—placed orders with Monahan's predecessor for products. (Dkt. No. 1, Compl. ¶ 47; First Am. Compl. ¶ 61.) And 3M has continued to place such orders with Monahan. (Dkt. No. 1, Compl. ¶ 48; First Am. Compl. ¶¶ 19–21, 62.) These allegations cover far more than just one of the six factors.

In addition to control, total ownership, and common management, the complaint also alleges undercapitalization and a host of other facts[10] that show that 3M Gulf was simply a façade for 3M in doing business with Monahan. *See Trustees of the Village of Arden*, 2000 Del. Ch. LEXIS 7, at *12 (allowing veil piercing "where a subsidiary is in fact a mere instrumentality or alter ego of its owner."); *Upjohn Co.*, 1990 WL 792 32, at *4 (observing that veil piercing is appropriate where a wholly owned subsidiary is treated as a "division" of the parent and acts as the parent's alter ego). As explained in Monahan's First Amended Complaint, Defendants acted as "one fluid unit" through all of the transactions at issue — with products manufactured to 3M's specifications incorporating 3M patented elements; products with 3M's name and logo on the

---

[10] In addition to the allegations discussed above, Monahan's amended complaint also alleges—as confirmed by the documents themselves—that 3M refers to "our" order when doing business with Monahan. This clearly suggests that 3M and 3M Gulf considered themselves to be the same entity in dealing with Monahan. And the amended complaint also alleges—likewise confirmed by the documents—that the shipping materials used by 3M *and* 3M Gulf contain only 3M's name—not 3M Gulf's. (First Am. Compl., ¶¶ 20–21, 26–30.)

label; products that 3M in fact placed orders for directly; with billing and delivery to 3M Gulf. (First Am. Compl. ¶¶ 64–65.) And when the dispute arose, it was 3M's reputation that Defendants claimed was damaged. (First Am. Compl. at ¶ 66.)

Moreover, with respect to the second element of its veil-piercing claim, Monahan has alleged facts that support a finding of unfairness and overall injustice. It would be inequitable to allow 3M to enjoy limited liability under the facts alleged in the complaint — which must be taken as true.[11] As alleged in the complaint, 3M and 3M Gulf acted indistinguishably in ordering product from and doing business with Monahan. (Dkt. No. 1, Compl. ¶¶ 1, 47–48; First Am. Compl. ¶¶ 1, 61–62.) Both 3M and 3M Gulf have refused to pay for product shipped by Monahan. (Dkt. No. 1, Compl. ¶¶ 51–52; First Am. Compl. ¶¶ 68–69.) They have even suggested to Monahan that it will struggle to recover payment or the product. (Dkt. No. 1, Compl. ¶ 52; First Am. Compl. ¶ 69.) In fact, 3M Gulf actually "joked" about the difficulty Monahan would encounter trying to collect from it. (Dkt. No. 1, Compl. ¶ 53; First Am. Compl. ¶ 70.) And 3M acceded to those "jokes" in a meeting attended jointly by 3M and 3M Gulf personnel to discuss Monahan's demands for payment. (Dkt. No. 1, Compl. ¶ 53; First Am. Compl. ¶ 70.) As it happens, the "jokes" have turned out to be much more than mere jest. They were a harbinger of the difficulty Monahan has indeed faced in bringing a lawsuit against Defendants. And they may ultimately be a warning of Monahan's inability to satisfy a foreign judgment against 3M Gulf. Indeed, Monahan has now been forced to close its Middleberry, Vermont operations and sell off its assets, in part due to Defendants' concerted actions to thwart collection of the money owed to Monahan.

The allegations in the complaint show that 3M knew very well that if it conducted business through 3M Gulf it would be able to receive product from Monahan with the

---

[11] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 572 (2007).

opportunity to earn a profit while potentially driving Monahan out of business. The allegations further show that 3M knew that by doing business with Monahan in the manner described above it would very likely be able to avoid liability for its actions and the actions taken by 3M Gulf as its alter ego. Only by piercing the corporate veil can this inequitable result be avoided.

These allegations more than satisfy the liberal notice-pleading standard under the Federal Rules of Civil Procedure. They put 3M on notice of "what to answer," *see Twombly*, 550 U.S. at 565 n.10, and they give 3M fair notice of Monahan's veil-piercing claim and the grounds upon which it rests. Accordingly, 3M's motion should be denied.

### D. Monahan's Complaint States a Claim for Relief Under an Agency Theory.

3M's motion should be dismissed because Monahan's complaint alleges both elements necessary to bring a claim against 3M under an agency theory. "An agency relationship results when one party consents to another party acting as its agent." *Kimco Leasing Co. v. Lake Hortonia Properties*, 640 A.2d 18, 20 (Vt. 1993) (citing *Swanson v. Wabash College*, 504 N.E.2d 327, 331 (Ind. Ct. App. 1987)). "An apparent agency is initiated by the manifestation of the principal to a third party, who reasonably believes that the other individual is the agent." *Id.* (citing *Swanson*, 504 N.E.2d at 332).

Monahan's complaint specifically alleges that 3M Gulf acted as 3M's agent. In particular, it alleges that "3M Gulf was formed to act as 3M's marketing and sales agent in the UAE." (Dkt. No. 1, Compl. ¶ 42; First Am. Compl. ¶ 56.) And it alleges particular manifestations made by 3M to Monahan that led Monahan to reasonably believe that 3M Gulf was an agent of 3M. Monahan made product according to 3M's—not 3M Gulf's— specifications. (Dkt. No. 1, Compl. ¶ 10; First Am. Compl. ¶¶ 11, 36 and 64.) The product was held out and sold around the world as a 3M, not 3M Gulf, product. (Dkt. No. 1, Compl. ¶ 1; First Am. Compl. ¶ 27.) And 3M itself sometimes placed orders with Monahan, leaving

14

Monahan to believe that when 3M Gulf placed orders they were made on 3M's behalf. (Dkt. No. 1, Compl. ¶¶ 47–48; First Am. Compl. ¶¶ 18–21; 61–62.) These allegations show a manifestation from 3M to Monahan (and the rest of the world) that 3M Gulf was 3M's agent. Accordingly, the complaint states a claim for relief from 3M under an agency theory.

### III. The Court Should Give Monahan the Opportunity to Conduct at Least Limited Discovery Related to Its Veil-Piercing Claims.

Finally, the Court should deny 3M's motion because it rests chiefly on a veil-piercing argument, and veil-piercing claims are generally inappropriate for resolution on motions to dismiss. *E.g.*, *Union Carbide*, 944 F. Supp. at 1145 ("[T]he nature and extent of the dominion and control exercised by [defendants] over [their subsidiary] is a question of fact, not subject to resolution on a motion to dismiss.") (citations omitted); *United States ex rel. Tyson v. Amerigroup Ill., Inc.*, No. 02-C-6074, 2005 U.S. Dist. LEXIS 28482, at *15–16 (N.D. Ill. Nov. 8, 2005) ("Plaintiffs are not required to allege the specific factual bases for their alter-ego claim. . . . Further discovery may ultimately support or disprove Plaintiffs' allegations, but for present purposes they include the requisite elements to establish an alter-ego relationship between Amerigroup Corp. and Amerigroup IL, and are sufficient to withstand Defendants' Motion to Dismiss.") (citations omitted) (attached as **Ex. 9**).

Accordingly, courts have denied motions to dismiss to permit discovery concerning veil-piercing allegations. *E.g.*, *O'Mahony v. Accenture, Ltd.*, 537 F. Supp. 2d 506, 515 (S.D.N.Y. 2008) (denying a motion to dismiss and explaining that absent discovery "it is unclear . . . whether the Court can pierce the corporate veil"); *Toppel v. Marriott Int'l, Inc.*, No. 03-Civ.-3042 (DAB), 2006 U.S. Dist. LEXIS 60529, at *25 (S.D.N.Y. Aug. 24, 2006) (denying a motion to dismiss "because after discovery Plaintiffs may be able to prove that the corporate veil . . . shall be pierced") (attached as **Ex. 10**); *Bear Hollow, LLC v. Moberk, LLC*, No. 5:05CV210, 2006 U.S. Dist. LEXIS 36780, at *50–51 (W.D.N.C. June 5, 2006) ("Since piercing the

corporate veil depends upon facts that Plaintiffs must obtain through discovery, Defendants' Motion to Dismiss is premature and is denied as to Count Nine of the Complaint.") (attached as **Ex. 11**).

In fact, these cases show that veil-piercing claims can be relatively easy to *plead* under the Federal Rules of Civil Procedure precisely for the same reason that they can be difficult to *prove* under Delaware substantive law.[12] Veil-piercing claims turn on facts that are difficult to uncover. The elements discussed in Part II.C of this brief can usually be proved only after discovering facts beyond the grasp of plaintiffs at the pleading stage. *See, e.g., O'Mahony*, 537 F. Supp. 2d at 515. Because veil-piercing claims turn on these difficult and close questions of secret facts, they are generally inappropriate for resolution on motions to dismiss. *See, e.g., Union Carbide*, 944 F. Supp. at 1145; *Amerigroup*, 2005 U.S. Dist. LEXIS 28482, at *15–16.

Monahan's allegations are sufficient to satisfy the liberal notice-pleading standard under the Federal Rules of Civil Procedure by stating claims for relief under contract, veil-piercing, and agency theories. Rather that dismissing Monahan's claims at this very early stage the Court should give Monahan an opportunity to perform discovery on the veil-piercing issue.

## Conclusion

By bringing its motion, 3M invites this Court to condone 3M's inequitable conduct that has already contributed to forcing Monahan to discontinue its operations in Vermont, and that has caused Monahan extreme difficulty in serving process on 3M Gulf in the UAE. Similar difficulties can be expected in recovering any judgment against 3M Gulf. Granting 3M's motion would likely leave Monahan without any recourse for the harm suffered at the hands of 3M and 3M Gulf, who acted as the same entity in their dealings with Monahan. In fact, as alleged in

---

[12] 3M ignores this distinction when it points to cases addressing veil-piercing claims at later stages of litigation regarding the standard of evidence necessary to *prove* a veil-piercing claim under Delaware law. (*See* Dkt. No. 11, Def.'s Mot. to Dismiss 8).

Monahan's First Amended Complaint at paragraphs 73 and 74, it appears that 3M and 3M Gulf did business with Monahan through 3M Gulf for the very purpose of avoiding service of process and, ultimately, liability. Granting 3M's motion would unfairly reward that conduct. The Court should not allow such an inequitable outcome where Monahan has so clearly met the permissive pleading standard applicable under the Federal Rules of Civil Procedure.

Monahan's complaint specifically alleges each of the elements of each of its claims for relief against 3M. The complaint serves its function under the Federal Rules of Civil Procedure by putting 3M on notice of the claims against it. Monahan is therefore entitled to move forward with its claims against 3M.

Moreover, as discussed above in section I, 3M's motion is moot because it is directed to Monahan's original complaint, which has been superseded by the First Amended Complaint.

For these reasons the Court should deny 3M's Motion to Dismiss.

Dated: November 9, 2009

WARNER NORCROSS & JUDD LLP

Brian D. Lang
Jonathan E. Moore
Warner Norcross & Judd LLP
Counsel for Monahan SFI, LLC
400 Terrace Plaza, P.O. Box 900
Muskegon, MI 49443
231.727.2612
blang@wnj.com
*Admitted Pro Hac Vice*

Robert S. DiPalma
Paul Frank + Collins
Co-Counsel for Monahan SFI, LLC
One Church Street
Burlington, VT 05401
802.658.2311
rdipalma@pfclaw.com

GR1724617-1